1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

BANK OF AMERICA, N.A.,

8

Plaintiff(s),

9

v.

10

ARLINGTON WEST TWILIGHT
HOMEOWNERS ASSOCIATION, et al.,

11

12

Defendant(s).

Case No. 2:16-CV-650 JCM (CWH)

ORDER

13

14      Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for

15  summary judgment.  (ECF No. 36).  Defendant Arlington West Twilight Homeowners Association

16  (the "HOA") and defendant/crossclaimant Thomas Jessup, LLC, Series IV ("Jessup IV") filed

17  responses (ECF Nos. 40, 38), to which BANA replied (ECF Nos. 43, 41).

18      Also before the court is the HOA's motion for summary judgment (ECF No. 37), in which

19  defendant Thomas Jessup, LLC ("Jessup") joined (ECF No. 39).  BANA filed a response (ECF

20  No. 42), to which the HOA relied (ECF No. 44).

**I.      Facts**

21

22      This case involves a dispute over real property located at 9179 Smugglers Beach Court,

23  Las Vegas, Nevada 89178 (the "property").

24      On March 26, 2008, Roy and Michelle Kinard (the "Kinards") purchased the property by

25  way of a loan from DHI Mortgage Company, LTD. in the amount of $294,956.00, which was

26  secured by a deed of trust recorded on March 31, 2008.  (ECF No. 1 at 4).  Federal Housing

27  Administration ("FHA") insured the note and deed of trust.  (ECF No. 1 at 4).  Later, the deed of

28  trust was assigned to BANA via an assignment of deed of trust.  (ECF No. 1 at 4).

**James C. Mahan**
**U.S. District Judge**

1    On October 21, 2010, Alessi & Koenig, LLC ("A&K"), acting on behalf of the HOA,

2    recorded a notice of delinquent assessment lien, stating an amount due of $850.00. (ECF No. 1 at

3    4). On January 31, 2011, A&K recorded a notice of default and election to sell to satisfy the

4    delinquent assessment lien, stating an amount due of $1,807.00. (ECF No. 1 at 4–5).

5    On May 10, 2011, BANA remitted payment to the HOA to satisfy to superpriority amount

6    owed to the HOA. (ECF No. 1 at 5).

7    On August 14, 2012, A&K recorded a notice of trustee's sale, stating an amount due of

8    $3,256.00 and scheduling the sale for September 12, 2012. (ECF No. 1 at 5). Defendant Thomas

9    Jessup, LLC ("Jessup") purchased the property at the foreclosure sale for $7,350.00. (ECF No. 1

10   at 6). A trustee's deed upon sale in favor of Jessup was recorded on October 2, 2012. (ECF No.

11   1 at 6).

12   Jessup IV acquired the property from Jessup via a quit claim deed recorded on May 31,

13   2013. (ECF No. 1 at 6).

14   On March 24, 2016, BANA filed the underlying complaint, alleging four causes of action:

15   (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the

16   HOA and A&K; (3) wrongful foreclosure against the HOA and A&K[1]; and (4) injunctive relief

17   against Jessup IV. (ECF No. 1). On April 15, 2016, Jessup IV filed an answer and

18   cross/counterclaims, alleging two causes of action: (1) quiet title against all parties; and (2)

19   declaratory relief against BANA. (ECF No. 11). The court dismissed the wrongful foreclosure

20   and breach of NRS 116.1113 claims. (ECF No. 45).

21   In the instant motions, BANA and the HOA both move for summary judgment seeking to

22   quiet title in their favor. (ECF Nos. 36, 37).[2]

23

_____

24   [1] In the complaint, BANA alleges wrongful foreclosure against "NAS." (See ECF No. 1

25   at 13). As the body of the complaint makes allegations against A&K, not NAS, the court will
     construe the claim as against A&K.

26   [2] As an initial matter, the court takes judicial notice of the following recorded documents:
     first deed of trust (ECF No. 36, exh. A); notice of delinquent assessment (ECF No. 36, exh. C);

27   notice of default and election to sell (ECF No. 36, exh. D); notice of trustee's sale (ECF No. 36,
     exh. E); trustee's deed upon sale (ECF No. 36, exh. H); assignment of deed of trust (ECF No. 36,

28   exh. B); and quitclaim deeds (ECF No. 42, exhs. A, B). See, e.g., United States v. Corinthian
     Colls., 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public

James C. Mahan
U.S. District Judge

- 2 -

## II.      Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

---

records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

1   If the moving party satisfies its initial burden, the burden then shifts to the opposing party

2   to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

3   *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

4   opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

5   that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6   versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

7   631 (9th Cir. 1987).

8   In other words, the nonmoving party cannot avoid summary judgment by relying solely on

9   conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

10  1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

11  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

12  for trial.  *See Celotex*, 477 U.S. at 324.

13  At summary judgment, a court's function is not to weigh the evidence and determine the

14  truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*,

15  *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

16  justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

17  nonmoving party is merely colorable or is not significantly probative, summary judgment may be

18  granted.  *See id.* at 249–50.

19  **III.    Discussion**[3]

20  Under Nevada law, "[a]n action may be brought by any person against another who claims

21  an estate or interest in real property, adverse to the person bringing the action for the purpose of

22  determining such adverse claim." Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

23  any particular elements, but each party must plead and prove his or her own claim to the property

24  in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

25  *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

26

27       [3]  The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266.  Except
    where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are
28  to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation
    occurred.

**James C. Mahan**
**U.S. District Judge**

1    marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that

2    its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*,

3    918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff

4    to prove good title in himself.").

5        Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its

6    homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives

7    priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as

8    "[a] first security interest on the unit recorded before the date on which the assessment sought to

9    be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

10       The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first

11   security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the

12   Nevada Supreme Court provided the following explanation:

13       As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces,
         a superpriority piece and a subpriority piece.  The superpriority piece, consisting of
14       the last nine months of unpaid HOA dues and maintenance and nuisance-abatement
         charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all
15       other HOA fees or assessments, is subordinate to a first deed of trust.

16   334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

17       Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority

18   lien by nonjudicial foreclosure sale.  *Id*. at 415.  Thus, "NRS 116.3116(2) provides an HOA a true

19   superpriority lien, proper foreclosure of which will extinguish a first deed of trust."  *Id*. at 419; *see*

20   *also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale"

21   upon compliance with the statutory notice and timing rules).

22       Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to

23   NRS 116.31164 of the following are conclusive proof of the matters recited:

24       (a) Default, the mailing of the notice of delinquent assessment, and the recording
         of the notice of default and election to sell;
25       (b) The elapsing of the 90 days; and
         (c) The giving of notice of sale[.]
26

27

28

James C. Mahan
U.S. District Judge                                          - 5 -

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals.  *See id.* at 1112.

Here, the parties have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale.  (*See* n.2 *supra*).  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure.").  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle Jessup IV to success on its quiet title claim.  *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title).  Thus, the question remains whether defendants have demonstrated sufficient grounds to justify setting aside the

---

[4]  The statute further provides as follows:

   2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

   3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

1    foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the

2    circumstances that bear upon the equities. This includes considering the status and actions of all

3    parties involved, including whether an innocent party may be harmed by granting the desired

4    relief." *Id.*

5        **A.  Rejected Tender**

6        BANA asserts that it tendered A&K a check for $423.00 on May 10, 2011. (ECF No. 36

7    at 6). BANA argues that under *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911

8    (Nev. 2016), BANA's tender discharged the superpriority lien. (ECF No. 36 at 5).

9        The court disagrees. The *Stone Hollow* court held that "[w]hen rejection of a tender is

10    unjustified, the tender is effective to discharge the lien." 382 P.3d at 911. Here, BANA has not

11    set forth any evidence suggesting that the alleged rejection was unjustified. In fact, to the contrary,

12    BANA has acknowledged that it tendered an insufficient amount.

13        Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority

14    portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

15    *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

16    lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*

17    *also, e.g., 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149

18    (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

19    security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

20    *Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev.

21    1980))).

22        The superpriority lien portion, however, consists of "the last nine months of unpaid HOA

23    dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of

24    "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see*

25    *also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of

26    unpaid assessments and certain charges specifically identified in § 116.31162.").

27        BANA merely presumed, without adequate support, that the amount set forth in the notice

28    included more than the superpriority lien portion and that tendering an amount BANA calculated

James C. Mahan
U.S. District Judge

- 7 -

1    to be the superiority portion of the lien would be sufficient to preserve its interest in the property.

2    *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only

3    when a subordinate interest has failed to make good the deficiency in performance or payment for

4    35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is

5    made good at least 5 days prior to sale).

6            On January 31, 2011, A&K recorded a notice of default and election to sell to satisfy the

7    delinquent assessment lien, stating an amount due of $1,807.00.  On May 10, 2011, BANA

8    remitted payment in the amount of $423.00 to the HOA to satisfy to superiority amount owed.

9    Rather than tendering the $1,807.00 due so as to preserve its interest in the property and then later

10   seeking a refund of any difference, BANA elected to pay a lesser amount based on its unwarranted

11   assumption that the amount stated in the notice included more than what was due.  *See SFR*

12   *Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount

13   and then sue for a refund).  Had BANA paid the amount set forth in the notice, the HOA's interest

14   would have been subordinate to the first deed of trust.  *See* Nev. Rev. Stat. § 116.31166(1).

15           After failing to use the legal remedies available to defendants to prevent the property from

16   being sold to a third party—for example, seeking a temporary restraining order and preliminary

17   injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—

18   BANA now seeks to profit from its own failure to follow the rules set forth in the statutes.  *See*

19   *generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case

20   before us, we can see no way of giving the petitioner the equitable relief she asks without doing

21   great injustice to other innocent parties who would not have been in a position to be injured by

22   such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior*

23   *Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has

24   access to all the facts surrounding the questioned transaction and merely makes a mistake as to the

25   legal consequences of his act, equity should normally not interfere, especially where the rights of

26   third parties might be prejudiced thereby.").

27

28

**James C. Mahan**
**U.S. District Judge**

Based on the foregoing, BANA has failed to establish that BANA tendered the deficiency amount prior to the foreclosure sale so as to render Jessup IV's title subject to BANA's deed of trust.

**B.  Due Process**

BANA argues that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries.  (ECF No. 36 at 8–11).  BANA further contends that any factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*").  (ECF No. 36 at 8–11).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights.  *Bourne Valley*, 832 F.3d at 1157–58.  The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2).  *See id.* at 1158.  At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk.  *See id.*

To state a procedural due process claim, BANA must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist*., 149 F.3d 971, 982 (9th Cir. 1998).  BANA has satisfied the first element as a deed of trust is a property interest under Nevada law.  *See* Nev. Rev. Stat. § 107.020 *et seq*.; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale").  However, BANA fails on the second prong.

Due process does not require actual notice.  *Jones v. Flowers*, 547 U.S. 220, 226 (2006).  Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right.  BANA does not dispute that it received adequate or actual notice of the foreclosure sale.

James C. Mahan
U.S. District Judge

1   Rather, BANA merely argues that whether it received actual notice is irrelevant based on BANA's

2   misinterpretation of *Bourne Valley*.

3   **C.  Preemption**

4   BANA argues that the HOA lien statute cannot interfere with the federal mortgage

5   insurance program or extinguish mortgage interests insured by the FHA.  (ECF No. 36 at 12).

6   The single-family mortgage insurance program allows FHA to insure private loans,

7   expanding the availability of mortgages to low-income individuals wishing to purchase homes.

8   *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal.

9   2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No.

10  2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same).  If a

11  borrower under this program defaults, the lender may foreclose on the property, convey title to

12  HUD, and submit an insurance claim.  24 C.F.R. § 203.355.  HUD's property disposition program

13  generates funds to finance the program.  *See* 24 C.F.R. § 291.1.

14  Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured

15  property thus interferes with the purposes of the FHA insurance program.  Specifically, it hinders

16  HUD's ability to recoup funds from insured properties.   As this court previously stated in

17  *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the

18  foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS

19  116.3116 may not extinguish a federally-insured loan.  No. 2:13–CV–1199 JCM (VCF), 2015 WL

20  1990076, at *4 (D. Nev. Apr. 30, 2015).

21  However, the instant case is distinguishable from these cases in that, here, FHA is not a

22  named party.  Neither the complaint nor the counterclaim seeks to quiet title against FHA.  Further,

23  BANA's quiet title claim does not seek declaratory relief against FHA, but only as to defendants.

24  Thus, this argument provides no support for BANA's motion as the outcome of the instant case

25  has no bearing on FHA's ability to quiet title.

26  **D.  Retroactivity**

27  BANA contends that *SFR Investments* should not be applied retroactively to extinguish the

28  first deed of trust.  (ECF No. 36 at 25).

**James C. Mahan**
**U.S. District Judge**

1    The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous

2 cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec.*

3 *Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC*

4 *Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev.

5 Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR*

6 *Investments*, reasoning that "the district court's decision was based on an erroneous interpretation

7 of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL

8 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's

9 conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR*

10 *Investments* applies to this case.

11 **IV.**  **Conclusion**

12    Based on the aforementioned, BANA has failed to raise a genuine dispute so as to preclude

13 summary judgment in favor of Jessup IV and the HOA.  Nor has BANA established that it is

14 entitled to summary judgment in its favor.  BANA did not tender the amount provided in the notice,

15 as statute and the notice itself instructed, and did not meet its burden to show that BANA is entitled

16 to judgment as a matter of law based on due process, preemption, or retroactivity.

17    Accordingly,

18    IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for

19 summary judgment (ECF No. 36) be, and the same hereby is DENIED.

20    IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 37)

21 be, and the same hereby is, GRANTED consistent with the foregoing.

22    The clerk shall enter judgment accordingly and close the case.

23    DATED March 22, 2017.

24

25            UNITED STATES DISTRICT JUDGE

26

27

28

**James C. Mahan**
**U.S. District Judge**